IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CORY WILLIAMS,              :
#159530                     :
    Plaintiff,              :
                            :
vs.                         :        CIVIL ACTION 12-592-WS-M
                            :
TONY PATTERSON, *et al.*,   :
    Defendants.             :


## REPORT AND RECOMMENDATION

This § 1983 action, filed by Cory Williams, an Alabama
prison inmate proceeding *pro se*, was referred to the
undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local
Rule 72.2(c)(4), and is now before the Court on Plaintiff's
Amended Complaint (Doc. 5), and Defendants Tony Patterson
and Ervin Dailey's Answer and Special Report (Doc. 32),
which the Court has converted into a Motion for Summary
Judgment. (Doc. 33). After consideration of these
pleadings, and for the reasons set out below, it is
recommended that Defendants' Motion for Summary Judgment be
granted and that Plaintiff's remaining retaliation claims
against these Defendants be dismissed with prejudice.

## I.   FACTS AND PROCEEDINGS

Based on the record before it, the Court summarizes
the parties' relevant allegations as follows.

Plaintiff filed his Complaint on September 11, 2012 alleging due process violations during two disciplinary hearings based on two rule violations: Rule #64 possession of contraband (a cell phone) and Rule #92 aiding and abetting another to commit a violation of institutional rules. (Doc. 1). On December 5, 2012, Plaintiff filed a Motion for Leave to Amend Complaint to raise the instant retaliation claim (Doc. 5), which was granted by the Court on January 4, 2013. On August 14, 2013, the undersigned entered a Report and Recommendation that Plaintiff's disciplinary claims be dismissed with prejudice for lack of subject matter jurisdiction, or, in the alternative, for *Res Judicata;* however, Plaintiff's claim for retaliation as raised in his Amended Complaint was allowed to proceed*.* (Doc. 25). The Report and Recommendation was adopted by the District Judge on September 10, 2013 and Defendants were dismissed as to those allegations.[1] Defendants Patterson and Dailey were ordered served, which occurred by waiver of service on July 19, 2013 and August 20, 2013, respectively. Defendants were ordered to file to their Answer and Special Reports responding to Plaintiff's

---

[1]    Defendant Patterson was not served on the original Complaint due to his retirement from ADOC. Defendant Dailey, though expressly named in the Complaint, was apparently overlooked due to a clerical error and service was not effected on him at origination.

retaliation claim as raised in his Amended Complaint, which
they did.  (Doc. 32).

Plaintiff's Amended Complaint blanketly alleges
"Defendant Patterson has constantly harassed [P]laintiff
through his subordinates, since [P]laintiff initiated the
instant complaint in this Court.  Plaintiff submits in the
latter part of October 2012, his locker box was searched by
Defendant Dailey, who totally ransacked [P]laintiff's
living area under the pretense of a random search.  A few
days later [P]laintiff's personal locker box was ransacked
again."  (Doc. 5 at 1-2).  Plaintiff does not indicate who
allegedly searched his locker box the second time.
According to Plaintiff, and as a result of the first search
by Defendant Dailey, Plaintiff was falsely charged with
conspiracy; for the second alleged search, he was charged
with "possession of contraband."  (*Id.* at 2).  Plaintiff
states that prior to "filing the Original Complaint, . . .
he was not being harassed [and] searched" and that these
incidences were Defendants' retaliatory attempts to "stain
Williams [sic] efforts to [r]ehabilitate  to enhance his
chance of having the denial of his parole reconsidered."
(*Id.*).

Additionally, Plaintiff contends that, as a result of
the charges set out above, he has been placed in

3

segregation which "hamper[s] his efforts to research and properly litigate his complaint [sic], because . . . segregation denies you access to Court." (*Id.*). Plaintiff is serving three consecutive thirty-year sentences for two Robbery I convictions and an Attempted Murder conviction since 1999. (Doc. 32-1 at 1). Plaintiff's Amended Complaint is not sworn to under oath or under penalty of perjury and does not make an additional prayer for relief.

Defendants' Answer and Special Report paint a different picture than Plaintiff's allegations. Generally, Defendants deny Plaintiff's allegations and plead, *inter alia,* the defenses of failure to state a claim upon which relief can be granted, various immunities including qualified and sovereign immunity, and the affirmative defense of unclean hands. (Doc. 32 at 1-3).

Overall, Defendants rebut Plaintiff's retaliatory allegations indicating that a random search, done out of retaliation, was never conducted on Plaintiff's locker box. Instead, Defendants attest that each "search" was a legitimate penological consequence of Plaintiff's attempt to commit rule violations within the prison. The facts relating to each alleged search according to Defendants are set out below.

a. Rule Violation #510 Conspiracy

4

to Commit Violation of Rules

On October 18, 2012, approximately one month after Plaintiff filed his original Complaint, an administrative assistant confiscated a letter en route to Plaintiff, in general population, from another inmate, Arlo Townsend, in segregation, conspiring to move contraband into the segregation unit. (Doc. 32-2 at 2, 4-5). As a result of finding this letter, Plaintiff was arrested and Defendant Dailey was ordered by his supervisor, Sergeant Larry Bailey, to pack up Plaintiff's property and escort him to segregation to be processed pending disciplinary action. (Docs. 32-2, 32-4 at 2, 1-2). Defendant Dailey attests that he never ransacked Plaintiff's living area, nor did he conduct a random search of Plaintiff's belongings; rather he followed supervisory orders as a result of the potential conspiracy. (Doc. 32-4 at 1-2). Disciplinary proceedings were initiated against Plaintiff and, according to Alabama Department of Corrections procedure (doc. 32-6 at 2-7), a hearing to determine guilt was conducted within ten days of the incident. (Doc. 32-2 at 7-16). Based on an affidavit from inmate Townsend indicating that Plaintiff had "no knowledge of the letter in an attempt to conspire with [him] on anything. . . . [Plaintiff] is innocent and I am the responsible party of the situation" (doc. 32-2 at 20),

Plaintiff was found not guilty of the rule violation and
moved back to general population on November 5, 2012.
(Doc. 32-5 at 3).  There is no dispute that Plaintiff was
afforded adequate due process during this disciplinary
proceeding.  Based on the record, it appears that this is
the only instance in which Defendant Dailey was involved
with Plaintiff or his belongings since Plaintiff filed his
Complaint; Defendant Patterson appears to have had no
involvement at all in these proceedings, as he was not the
supervisor who ordered Defendant Dailey to pack up
Plaintiff's locker box.

The Court also notes that due to Defendant Patterson's
retirement and the clerical error regarding service of
process on Defendant Dailey explained above, neither
Defendant was aware at the time of either arrest that
Plaintiff had filed a Complaint regarding the conditions of
his confinement.

   b.  Rule Violation #927: Possession of Unauthorized

                  Drugs, Intoxicants or Paraphernalia

On November 13, 2012, approximately eight days after
Plaintiff was released back to general population, Officer
Lindsey was assisting in the "24-Hour Searches."  (Doc. 32-
2 at 21).  During the search, Officer Lindsey conducted a
pat search of Plaintiff during which he "found and

confiscated a small piece of paper from [Plaintiff's] left sock." (*Id.*).  Upon further examination, Officer Lindsey discovered a small white rock substance inside the piece of paper.  (*Id.*).  The substance was tested and confirmed to be crack cocaine.  (*Id.*). Plaintiff was strip searched with no additional contraband found, and then escorted to segregation for processing.  (*Id.*). During the strip search, Plaintiff admitted that the rock was crack cocaine. (*Id.*).  Disciplinary charges were initiated and a hearing conducted within ten days compliant with  ADOC procedure. (Doc. 32-2 at 25-37).  Based on the sworn, eyewitness testimony of Officer Lindsey, Plaintiff was found guilty of the rule violation, #927: Possession of Unauthorized Drugs, Intoxicants or Paraphernalia.  (*Id.*).  Again, there is no dispute that Plaintiff received adequate due process during this disciplinary proceeding.  The Court notes that other than being informed of the incident, the record does not indicate the Defendant Patterson had any involvement with this disciplinary proceeding.  Defendant Dailey was uninvolved altogether.

Plaintiff filed his Motion in Opposition to Defendants [sic] Motion for Summary Judgment (Doc. 34) and an Affidavit, (Doc. 35), which is not notarized because "No

notary available," but witnessed by three other inmates. Neither the Motion nor the Affidavit add anything of substance to Plaintiff's allegations.

The Motion in Opposition begins with an unnecessary rehash of the due process disciplinary claims that have already been adjudicated. *See* (Docs. 25, 30)(Report and Recommendation to dismiss with prejudice Plaintiff's claims for lack of subject matter jurisdiction, or in the alternative, R*es Judicata* and Order adopting the Report and Recommendation by Chief Judge William H. Steele). The allegations which are relevant to the retaliation claim are restated as factually unsupported conclusions: "Defendant [sic] Patterson and Dailey was [sic] aware of [sic] the lawsuit had been filed, because [P]laintiff constantly complain [sic] to the Defendants that his rights were violated in the disciplinary proceedings and further plaintiff had initiated a State action challenging the [d]isciplinary proceedings." (Doc. 34 at 3). Plaintiff then concludes that "[s]hortly after filing the lawsuit, Plaintiff [sic] locker box and living area was ransacked [twice] . . . apparently at the direction of Defendant Patterson." (*Id*.). Plaintiff concludes that Defendant Patterson continued to harass him by ordering false

conspiracy charges against him resulting in weeks spent in segregation. (*Id.* at 3-4). Plaintiff also realleges his access to courts complaint, along with the vague allegation that he was falsely charged with violating prison rules and placed in segregation in November 2013.[2] (*Id.*).

The Affidavit likewise restates that Plaintiff was harassed by Defendants for filing a Complaint regarding the violations of his rights by prison officials and fails to add anything of additional substance to his Amended Complaint. (Doc. 35).

## II. DISCUSSION

### a. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

---

[2]  The Court interprets this statement as error, as the record reflects that the alleged acts of retaliation occurred in November of 2012, not 2013.

fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). The Court must view the evidence produced by "the

nonmoving party, and all factual inferences arising from

it, in the light most favorable to" that party. *Barfield*

*v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However,

Rule 56(e) states that:

> If a party fails to properly support an
> assertion of fact or fails to properly address
> another party's assertion of fact as required
> by Rule 56(c), the court may:
> (1) give an opportunity to properly support or
> address the fact;
> (2) consider the fact undisputed for purposes
> of the motion;
> (3) grant summary judgment if the motion and
> supporting materials—including the facts
> considered undisputed—show that the movant is
> entitled to it; or
> (4) issue any other appropriate order.

Fed.R.Civ.P. 56(e). "[T]here is no issue for trial unless

there is sufficient evidence favoring the nonmoving party

for a jury to return a verdict for that party. . . . If the

evidence is merely colorable, . . . or is not significantly

probative, . . . summary judgment may be granted."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50

(1986) (internal citations omitted). "Summary judgment is

mandated where a party fails to make a showing sufficient

to establish the existence of an element essential to that

party's case, and on which that party will bear the burden

of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

### b. Retaliation

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir. 2003). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *O'Bryant v. Finch,* 637 F.3d 1207, (11th Cir. 2011)(*citing Smith v. Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008)). "However, it has been recognized that claims of retaliation are subject to abuse by prisoners." *Id.* (citation omitted). Thus, claims of retaliation by prisoners should be reviewed with "skepticism and particular care." *Parker* 2013 WL 1180310 at *4 n.3 (N.D.Ala. Feb. 6, 2013) (*citing Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995)).

To state a First Amendment claim for retaliation, a prisoner must demonstrate that the prison official's actions were the result of his having filed a grievance concerning the conditions of his confinement. *Farrow* at 1248 (citations omitted). Thus, to prevail on a

retaliation claim, the inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action. . . and the protected speech. . . ." *Smith v. Mosley,* 532 F.3d at 1276. "To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." *Moton v. Cowart,* 631 F.3d 1337, 1341 (11th Cir. 2011)(*citing Mosley* at 1278).

This Circuit determines "actors' subjective motivation by applying the burden-shifting formula from *Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle,* 429 U.S. 274 (1977)." *Mosley* at 1278. Under *Mt. Healthy,* [o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm [i.e., disciplinary action], the burden of production shifts to the defendant." *O'Bryant v. Finch,* 637 F.3d at 1217 (*citing Mosley* at 1278)(citation omitted). "Then, if the defendant can show that he would have taken the same action in the absence of protected activity, he is entitled to prevail on his motion for summary judgment as a matter

of law . . . ." *Id.* "In other words, if the official can show that he would have taken the disciplinary action in the absence of the prisoner's protected conduct, he cannot be held liable." *O'Bryant* at 1217 (*citing Mosley* at 1278 n. 22). "Plaintiff must show that his speech was a 'substantial' or 'motivating' factor in the allegedly retaliatory decision." *Gattis v. Brice,* 136 F.3d 724, 726 (11th Cir. 1998).

In addition to the *Mt. Healthy* analysis above, this Circuit has likewise determined that if a prisoner is found guilty of an actual disciplinary infraction after being afforded due process *and* there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. *O'Bryant* 637 F.3d at 1215 (emphasis in original). Because disciplinary proceedings can take place in a highly charged atmosphere where evidence that might be insufficient less exigent circumstances, the Supreme Court instructed that courts are not to set aside decisions of prison administrators that have some basis in fact since disciplinary proceedings, under the Due Process Clause, do not require the full panoply of rights due a defendant in a criminal proceeding. *Id.* at 1214 (*citing Wolff v.*

*McDonnell,* 418 U.S. 539 (1974). Thus, applying *Wolff,* the Supreme Court stated that "courts are not to conduct exhaustive reviews of the findings of prison disciplinary panels," because to do so would interfere with the legitimate penological objectives of the corrections system. *Young v. Jones,* 37 F.3d 1457, 1460 (11th Cir. 1994)(*citing Superintendent v. Hill,* 472 U.S. 445 (1985)). With this instruction, it becomes clear that a finding of guilt by the hearing officer "essentially checkmates [the plaintiff's] retaliation claim." *Parker,* 2013 WL 1180310, at *5 (*citing Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 2008). Therefore, a prisoner may not maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report when there is some evidence to sustain the conviction. *O'Bryant* at 1215; *see also Henderson, supra,* at 469; *Crittendon v. Campbell,* 2007 WL 2853398, at *7 (M.D. Ala. Sept. 27, 2007)

Turning to the facts of the instant case, the Court will treat Plaintiff's Amended Complaint as if contesting the disciplinary proceedings as a whole, including the alleged searches following those arrests, rather than the alleged searches alone, as Plaintiff alleges in his Amended Complaints. (Doc. 5).

## 1. Disciplinary Report for Rule Violation #510:

## Conspiracy to Commit Rule Violations

Plaintiff contends that he was confined to segregation for weeks based on charges with no evidence after being arrested for a letter addressed to him from inmate Townsend, which was seeking to move contraband into segregation, was confiscated by prison officials.  There is no dispute that Plaintiff has met his burden on the first two elements of his retaliation claim: (1) his § 1983 Complaint is protected speech; and (2) the disciplinary action taken against him would likely deter his speech. Thus, the main question here hinges on causation and whether Defendants' actions were causally connected to the alleged retaliatory action and the protected speech.  The Court finds that Plaintiff has failed to establish causation, which is essential to maintaining a retaliation claim.

Under the circumstances of this case, there are various and independent reasons why Plaintiff's retaliation claim fails regarding the disciplinary proceedings surrounding this rule violation.  First, Plaintiff fails to establish the third essential element of his retaliation claim, causation.  Regarding this disciplinary report, Plaintiff cannot prove knowledge on the part of the

Defendants and thus fails to prove that his protected speech was the reason Defendants' arrested him. The record is clear that, at the time of the alleged search and arrest, neither Defendant had been served[3] and therefore did not know that Plaintiff had engaged in protected speech, thereby eliminating any retaliatory motive in arresting him. Plaintiff has offered no factually supported allegations that Defendants did, in fact, know that Plaintiff had filed this § 1983 action; rather, Plaintiff merely concludes that Defendants knew about the § 1983 Complaint because Plaintiff "constantly complain [sic] to the Defendants that his rights were violated in the Disciplinary proceedings and further [P]laintiff had initiated a State action challenging the Disciplinary proceedings," (doc. 34 at 3), which had already been adjudicated and upheld by the Alabama Supreme Court. (Doc. 16 at 75-83). It is incumbent upon Plaintiff to plead specific facts from which the court could, at a minimum, infer a retaliatory motive on the part of the defendants. *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008). Plaintiff fails to establish this essential element of his

---

[3]   Plaintiff filed his original Complaint on September 17, 2012. The alleged retaliation occurred in October and November of 2012, some 8-9 months before Defendants Patterson and Dailey were served on July 22, 2013 and August 6, 2013, respectively. (Docs. 24, 29).

claim, thus the burden shifting analysis to prove Defendants' subjective motivation under *Mt. Healthy, supra,* p.17 is unnecessary. However, in the event that it is found that Plaintiff has established causation thereby shifting the burden to Defendants, the Court will apply the *Mt. Healthy* analysis to determine if Defendants have proven that they would have taken the same action against Plaintiff had he not engaged in protected speech.

Focusing on Defendants' submissions, the Court finds that Defendants have sufficiently proven that they were not subjectively motivated by retaliatory animus in arresting Plaintiff for conspiracy to commit a rule violation. Defendants attest that Plaintiff was arrested for potentially conspiring to move contraband into segregation, not because they were retaliating against him for filing his original Complaint. (Doc. 32-3 at 1-2). Defendant Dailey attests that he was ordered by Sergeant Bailey (not Defendant Patterson) to pack up Plaintiff's locker box because Plaintiff would be held in segregation pending disciplinary proceedings. (Doc. 32-4 at 1). Defendant Dailey further attests that he never ransacked or randomly searched Plaintiff's belongings (*id.* at 2), but was merely following his supervisor's orders due to Plaintiff's arrest for conspiracy. The court finds these attestations

sufficient to prove that Defendants acted appropriately based on the potential rule violation, and independently of any retaliatory animus.

On the contrary, Plaintiff submits no direct evidence that his Complaint subjectively motivated the Defendants' conduct surrounding his arrest for the letter.  Instead, he relies on his own conclusory allegations, concluding without proving, that Defendants were subjectively motivated by retaliatory animus to arrest him.  The record once again speaks for itself that it would have been an impossibility for either Defendant to act out of retaliatory animus given that neither of them had been served and lacked actual knowledge of the pending § 1983 action.

Second, though Plaintiff was found not guilty of this violation based on the sending inmate's affidavit, the subject letter nonetheless posed a situation of penological concern, thereby calling for the same or similar response by Defendants.  To allow this letter to remain unaddressed could have created great disorder such that prison officials' ability to maintain order and achieve the institution's penological objectives could have been seriously impeded.  *See Smith v. Mosley,* 532 F.3d 1270, 1279 (11th Cir. 2008).

Third, regarding the allegations that Plaintiff was harassed at all, the Court finds that these allegations as a whole are pled in a conclusory manner, and conclusions cannot be taken as true, thereby causing Plaintiff's retaliation claim to fail. *Ashcroft,* 556 U.S. at 678; T*wombly,* 550 U.S. at 555; *see also, Fullman v. Graddick,* 739 F.2d at 556-57 (a complaint will be dismissed as insufficient where the allegations are vague and conclusory). Plaintiff offers no supporting facts to back up his allegations sufficient to allow the Court to infer retaliatory motive in Defendants' actions. Thus, Plaintiff fails to prove that he was retaliated against during the course of this disciplinary proceeding. Further, Defendants have sufficiently proven that they lacked the requisite knowledge and therefore subjective motivation in their behavior toward Plaintiff, and thus, establishing that they did not act out of retaliation and that the same action would have been taken had Plaintiff never filed his § 1983 Complaint.

### 2. Rule Violation #927: Possession of Unauthorized Drugs, Intoxicants or Paraphernalia

As with Rule Violation #510, Plaintiff's bare boned recitation of the facts hardly demonstrates a claim for retaliation. Plaintiff makes conclusory allegations that

he was placed in segregation a second time for no reason and charged with "possession of contraband," which he claims Defendants did in "retaliation for exercising [his] constitutional rights . . . [and to] stain [his] efforts to rehabilitate to enhance his chance of having the denial of his parole reconsidered."  (Doc. 5 at 2).

Pursuant to *O'Braynt v. Finch*, the Court finds that because Plaintiff was found guilty of the charged disciplinary infraction, i.e. possession of crack cocaine, after being afforded due process *and* there was evidence to support the disciplinary panel's fact finding, he cannot state a retaliation claim against the official involved in reporting the infraction.  *Id.,* at 1215 (emphasis in original).

The record indicates that Plaintiff was arrested and held in segregation pending disciplinary proceedings, at which he received due process according to *Wolff v. McDonnell, supra,* p. 15, and was subsequently found guilty based on Officer Lindsey's eye-witness testimony and Plaintiff's own confession to possession of the crack rock. He suffered adverse action because he actually violated prison rules, and not because he engaged in protected speech by filing his original Complaint.  Plaintiff even

admitted to possessing the cocaine rock during the strip
search.  (Doc. 32-2 at 21, 40).

Because Plaintiff admitted to possessing the crack
rock (doc. 32-2 at 21, 40), and thus, was found guilty of
the infraction, he cannot maintain a retaliation claim
against Defendants.  *See Parker,* 2013 WL 1180310, at *5
(citation omitted)(stating that a finding of guilt by the
hearing officer essentially checkmates the plaintiff's
retaliation claim).  "To find otherwise would render the
prison disciplinary system impotent by inviting prisoners
to petition the courts for a full retrial each time they
are found guilty of an actual disciplinary infraction *after*
having filed a grievance."  *O'Bryant* at 1216.  As
previously stated, courts are not to disturb the findings
of disciplinary panels unless the record is so devoid of
evidence that the findings of the panel were without
support or otherwise arbitrary.  *Id.* at 1215.

Furthermore, returning to the elements of a
retaliation claim, particularly the third element,
causation, Plaintiff has failed to causally connect either
Defendant Patterson or Dailey to this disciplinary
incident.  Plaintiff makes no mention of who performed the
search or reported the disciplinary against him.  It is
only in Defendants' evidentiary submissions that we learn

that neither Defendant Patterson nor Defendant Dailey were involved in the search at all, but rather, an Officer Lindsey was involved, although not named in the Complaint or Amended Complaint. (*See* Docs. 1, 5). Without sufficient allegations tying the named Defendants to the alleged retaliatory conduct, Plaintiff fails to establish the third essential causation element of retaliation. *O'Bryant,* 637 F.3d at 1216, 19-20; *see also Midway Servs., Inc., supra,* p. 10 (stating that summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial).

Assuming that it can be found that Plaintiff did meet all three essential elements of his retaliation claim regarding either disciplinary proceeding, the burden would then shift to the Defendants to prove that they would have taken the same action against Plaintiff in the absence of his protected speech. *O'Bryant* at 1217. The Court finds that Defendants have, once again, sufficiently met their burden.

The record speaks for itself that neither Defendant Patterson nor Defendant Dailey were served with Plaintiff's original Complaint which was filed on September 11, 2012.

*See* n. 3, *supra,* p.16 (Defendant Patterson was served on July 22, 2013, and Defendant Dailey was served on August 6, 2013). The alleged retaliation occurred in October and November of 2012, during which service had not been effected on either Defendant, thus neither Defendant knew of Plaintiff's Complaint.

In addition to lack of service of the original Complaint, Defendants have adequately proven that they would have taken the same course of action against Plaintiff if he had not engaged in protected speech. Defendants' actions were the result of Plaintiff's conduct in committing two separate rule violations, one of which he was found guilty, thereby negating any liability for their alleged wrongful acts. To allow either a violation or potential violation to go unaddressed could have substantially impeded the prison officials' ability to maintain order and achieve the institution's penological objectives. *Mosley,* 532 F.3d 1279.

As well, Plaintiff provides no supporting facts that Defendants subjectively knew Plaintiff had filed his Complaint and thus, were acting out of retaliatory animus. It is incumbent on Plaintiff to plead specific facts from which the court could, at a minimum, infer a retaliatory motive on the part of Defendants. *Douglas v. Yates,* 535

F.3d at 1321.  Plaintiff fails to plead such facts, and,

for these reasons, this Court concludes that Plaintiff's

retaliation claim as related to the disciplinary proceeding

for Possession of Unauthorized Drugs, Intoxicants or

Paraphernalia fails as a matter of law, and Defendants are

entitled to summary judgment in their favor.

### c.  Supervisory Liability

As for the allegations that Defendant Patterson

harassed Plaintiff through his subordinates, it is well

established in this Circuit that supervisory officials are

not liable [] for the unconstitutional acts of their

subordinates on the basis of *respondeat superior* or

vicarious liability."  *Gonzalez v. Reno,* 325 F.3d 1228,

1234 (11th Cir. 2003)(citations omitted).  "The standard by

which a supervisor is held liable in [his or] her

individual capacity for the actions of a subordinate is

extremely rigorous."  *Id.*  To establish supervisory

liability in this Circuit, a plaintiff must show that

either the supervisor personally participated in the

alleged unconstitutional conduct or that there is a "causal

connection between the actions of a supervising official

and the alleged constitutional deprivation."  *Cottone v.

Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003).  To establish

a causal connection, a plaintiff must plead facts that

plausibly show a causal relationship in one of three ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, or (3) the facts support the inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Gonzalez* 325 F.3d at 1234-35 (citations omitted).

Plaintiff alleges "Defendant Patterson has constantly harassed [P]laintiff through his subordinates, since [P]laintiff  initiated the instant complaint in this Court." (Doc. 5 at 1).  This is a conclusory allegation with no factual support indicating that Defendant Patterson is causally connected as a supervisor to the alleged constitutional deprivation as required by *Cottone* and *Gonzalez* above*,* and thus should be dismissed as vague and conclusory.  *See Ashcroft,* 556 U.S. at 678; T*wombly,* 550 U.S. at 555; *see also, Fullman,* 739 F.2d at 556-57 (a complaint will be dismissed as insufficient where the allegations are vague and conclusory).  Plaintiff has provided no facts which indicate personal participation in either disciplinary proceeding on the part of Defendant

Patterson.  Other than being informed about the disciplinary regarding Plaintiff's possession of cocaine charge (doc. 32-2 at 21), the record indicates that Defendant Patterson had no involvement in either set of circumstances.

Likewise, Plaintiff has failed to provide any facts indicating that Defendant Patterson (1) had notice of a widespread history of abuse which he neglected to correct; (2) implemented a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.  *Gonzalez,* 325 F.3d at 1234-35.  Plaintiff makes no mention of any abusive history in any of his pleadings, nor does he reference any sort of custom or systematic policy which would result in deliberate indifference to his constitutional rights.  Plaintiff also fails to establish that Defendant Patterson gave any sort of direction which he knew would result in his subordinates acting unlawfully or failed to stop them from acting unlawfully in the event that he knew they were doing so.  Accordingly, Plaintiff's claim for supervisory liability against Defendant Patterson fails as a matter of law.

d.  Access to Courts

The right of access to courts as defined in *Bounds v. Smith,* 430 U.S. 817 (1977), requires only that inmates be provided with some reasonable means by which they may bring their legal claims before the court.  However, the Supreme Court made it clear that to prevail on an access to courts claim, an inmate must establish prejudice by "demonstrating that the alleged shortcoming in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Lewis v. Casey,* 518 U.S. 343, 351 (1996).  The court in *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance" and noted that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.*  Though meaningful access to the courts is the touchstone, the inmate must show that prison officials actually impeded his pursuit of a non-frivolous post conviction claim or civil rights action.  *Wilson v. Blankenship,* 163 F.3d 1284 (11th Cir. 1998).  In that regard, Plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials.  *Parker v. Thomas,* 2013 WL 1180310, at *5 (N.D.Ala. Feb. 6, 2013).  The mere allegation of denial of

access to a law library is inadequate.  *Id.* (citation
omitted).

Plaintiff's general allegations do not meet this
standard.  Plaintiff presents no evidence that his efforts
to pursue his claims have been impeded, hindered or
altogether stymied at the hands of prison officials.
Plaintiff merely contends that the library consists of two
computers in a "12x24 foot room . . . to accommodate a
population of over 500 prisoners in population and 200
prisoners in segregation, . . . without books nor [sic] a
printer, it could take weeks for plaintiff [sic] to receive
relevant law; decisions and materials to maintain his
claims."  (Docs. 5, 34 at 2, 4).  The fact that Plaintiff
may experience some delay in accessing law library
materials is insufficient to state a valid access to courts
claim.  Up to this point, the record is clear that
Plaintiff has been able to meaningfully prosecute his
claims in a timely manner and with somewhat relevant case
law included in his pleadings and responses.  *See* (Doc.
34).

Furthermore, Defendant Patterson attests that
"[a]dministrative segregation inmates will be allowed
access to law books and legal kits by requesting them
through the ICS Lieutenant or designee."  (Doc. 32-23 at

2).  Though inmates may only receive two books at a time
and do not have direct access to computers, any new
information or missing information from the current books
is printed out and placed in a folder for check out at the
inmate's request. (*Id.*).  Segregation inmates are also
allowed, with appropriate approval, to print items from the
computer for their personal use at $0.50 per page.  (*Id.*).
Additionally, the "Law Library Clerk runner will deliver
law books on Sundays, Mondays, Wednesdays and Fridays.
Legal kits (paper [and] envelopes) [are] delivered on
Fridays.  A Notary Public [] visit[s] the Segregation unit
at least once each week, normally on Wednesday."  (*Id.*).
Plaintiff's access to courts allegations fall short of the
required showing of impediment, hindrance and prejudicial
harm.  Defendants' evidentiary submissions adequately
establish that Plaintiff has meaningful access to the
courts which does not prejudicially injure, hinder or
altogether stymie the prosecution of his case.  Without
providing sufficient allegations otherwise, Plaintiff fails
to assert a valid claim for denial of access to the courts.

### III.    Conclusion

     Based on the foregoing reasons, this Court concludes
that Defendants Tony Patterson and Ervin Dailey are
entitled to Summary Judgment in their favor on all claims

asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action against these Defendants be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

<u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 9th day of December, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE